Good morning everyone and welcome. Our first case for argument this morning is Paula Wallrich versus Samsung Electronics. Mr. Dvoretsky, close. Good morning Your Honor, may it please the court. Shai Dvoretsky for Respondents Appellants Samsung Electronics America and Samsung Electronics Company. The court should reverse the district court's order compelling arbitration based on straightforward application of black letter principles of procedure, evidence, and contract law. Starting with procedure and evidence, a party seeking to compel arbitration must present evidence, not just allegations, that the parties agreed to arbitrate. That's because under the Federal Arbitration Act Section 4 and Supreme Court precedent, the question of contract formation is always for the court and for a jury if there's a genuine issue of material fact. This court's case law therefore requires the proponent of arbitration to produce evidence of an arbitration agreement. The issue here is that appellees have produced zero evidence that any of them has an arbitration agreement with Samsung. And that issue breaks into two problems, attestation and particularity. First, allegations, which are all that appellees have, are simply not evidence as a matter of black letter law. Each appellee would need to attest, for example, in a to facts showing an arbitration agreement with Samsung. If anyone can't do that, the court is without power to compel arbitration. Second, as to particularity, bare bones factual attestations are no more sufficient than bare bones allegations. Each appellee would need to identify him or herself and provide contact information, identify which device he or she purchased and when and where in the carrier, and if possible, provide the IMEI number for the device. That information is necessary for Samsung and in turn for the district court to evaluate whether an arbitration agreement exists. Samsung doesn't have a direct to consumer relationship with phone purchasers, so it doesn't have records that allow it to determine based on the bare bones allegations in appellees petition, whether each appellee in fact has an arbitration agreement with Samsung. The district court thought that it, quote, must accept the unverified and unattested, quote, word of over 30,000 individuals. But a motion to compel is like a motion for summary judgment, not a motion to dismiss. That follows from this court's precedent in cases like Tinder and Cass. The court therefore erred in accepting appellees allegations as true rather than determining whether appellees proffered sufficient evidence to support those allegations. The district court relied on a discrete list of named claimants attached to the petition, but that list isn't evidence because, again, no appellee swore under penalty of perjury that they have a Samsung device and a valid arbitration agreement. In any event, that list only has personal identifying information like name and residence, which is not evidence that one agreed to arbitrate with Samsung. The district court also relied on the AAA's determination that appellees had met the But the AAA doesn't require claimants to establish at filing that they are bound by an arbitration agreement. It instead requires claimants to simply attach an arbitration agreement to their demand without proof that they're actually bound by it. It's as if I went on Google and searched Samsung Galaxy arbitration agreement and attached it to an arbitration demand. All the AAA did was to process the claims. It never determined that each appellee has a And so, lacking evidence that each appellee actually had an arbitration agreement with Samsung, the district court was without power to compel arbitration, and the district court's judgment should be reversed for that reason. The district court's judgment should also be reversed based on basic arbitration principles and rules of contract law. Appellees and Samsung agree that the arbitration agreements, assuming the parties agreed, commit fee questions to the AAA under the AAA rules. The exemplar arbitration agreement that the appellees have put forward is at S.A. 1162. The dispute here, therefore, comes down to whether the AAA applied its rules and determined that Samsung violated the rules by declining to pay fees and that its decision not to pay fees was a refusal to arbitrate. The simple answer to that question is no. That follows from both the rules that the AAA has in place for mass arbitrations that were incorporated into the arbitration agreement and from the AAA's communication with the parties in this case. Mass arbitration Rule 10d provides that a party may decline to pay fees, at which point the opposing party can decide whether to advance the fees. If the opposing party decides to advance the fees, the parties have to arbitrate. But if neither side wants to pay the fees, the consequence under Rule 10d and under Rule 1d is that the parties will not arbitrate and can instead go to court. That's exactly what happened here, and that's how we know that when the AAA here applied Rules 10d and 1d and closed the arbitrations, sending the appellees back to court if they wished, it was simply doing what the party's alleged agreement required. Appellees claim that by declining to pay, Samsung was refusing to arbitrate. But again, the rules say just the opposite by providing the option to decline to pay fees. The AAA's communication to the parties, this is at 5 SA 1275 to 1276, confirms that the AAA was not finding that Samsung had violated the rules, but rather was simply applying the AAA rules. That letter notes that Samsung declines to pay the fees. Claimants also decline to pay the fees so that the matters may proceed, and as a result under Rule 1d, the AAA at the claimant's request is closing the arbitration so that either party may choose to submit its dispute to the appropriate court for resolution. The Ninth Circuit in LifeScan, the Fifth Circuit in Dealer Computer Services, faced similar circumstances where the AAA, applying its rules where one party did not pay, closed the arbitrations, sent the parties off to court, and both the Fifth and the Ninth Circuits held that in that situation the court couldn't second-guess the AAA's determination. If the court has no questions, I'll reserve additional time. Well, I have questions that potentially bear on appellate jurisdiction. Sure. What has the district court ordered concretely? I ask that because I looked for the district court's order and didn't find it. So... And it may be because the district court didn't enter one. So the district court didn't... The district court wrote an opinion, but so far as I know, did not enter any order separate from the opinion. It did not enter a separate order from the opinion. So what is the district court actually ordered, or has it just written an opinion? Well, so I believe that the district court has granted the motion to compel arbitration, and at page RSA 30, when it turns to the fee issues, that finally the court turns to whether to compel Samsung to pay fees, and then it goes on to discuss... Samsung means which of the defendants? I think it's referring collectively to both. Yeah, well that's another problem, isn't it? I'm sorry? It's very hard to know whether we have appellate jurisdiction until we know what the district court has ordered, against whom, and what remains for decision in the district court. So Judge Easterbrook, I think the key question, the key issue here is that nothing remains for decision in the district court because... The district court said it was staying proceedings. You can stay proceedings only if there's something left for decision. Did the district judge give a clue what he thought was left for decision? Obviously, I'll be asking these questions of the plaintiff's counsel as well, but it's the first problem that we have to encounter to get anywhere. So I agree with you that there was no basis for the district court to enter a stay, and that's precisely why the minute order stay that the district court did put in place is not one that defeats appellate jurisdiction. That's what the 5th, 9th, and 11th circuits have held in similar situations, where there is a ruling on an order to compel arbitration in a standalone action. I think that the relief here that was ordered was ordered against both Samsung entities, Samsung Electronics America and Samsung Electronics Company, which again the district court is referring to collectively as Samsung. And in the section of the district court's opinion on fees, that is where I think the district court is saying, I was looking for the exact language here, so in the conclusion, the court grants petitioners motion to compel arbitration by ordering the parties to arbitrate, specifically ordering Samsung to pay its fees so they can. That I think is the particular order that the district court entered that makes this a final determination of the the motion to compel. Do you think there's any relation between this case and Smith against Sposiri? I don't think there is. Smith versus Sposiri is a case in which there were underlying claims brought in the district court, and then the district court compelled arbitration, and then the question is whether to enter a section 3 stay in that situation. There is no section 3 stay that can be entered here. Section 3 by its terms doesn't apply because this is not a case that was brought on an issue referable to arbitration. The only relief sought in this case was a petition to compel arbitration. So I don't think that Smith bears on this case, but I think that the reason there is appellate jurisdiction, again as the 5th, 9th, and 11th circuits have held in similar situations, and this court's description of the law in American International is consistent with this, where the only relief that has been sought is on a motion to compel arbitration, then an order granting that relief resolves the sole issue before the district court and leaves nothing for the district court to do, making its order final. Yes, the district court here purported to enter a minute order stay, but again, as the other circuits have explained, when the only relief sought is to compel arbitration, there is simply nothing left to stay, and that purported stay does not defeat appellate jurisdiction. All right, thank you very much. Thank you. Mr. Gupta. Good morning, Your Honors, and may it please the Court, Deepak Gupta for the appellees. I'd like to start with Judge Easterbrook's question about the final order or judgment of the court. Is there an order separate from the opinion? So the opinion was titled Memorandum, Opinion, and Order. That's just irregular. The federal rules don't apply for such a thing. There's no separate document. No separate document. And then in the conclusion section, I think Mr. Duretsky is correct, that the court said it was granting the motion to compel arbitration and ordering the parties to arbitrate, and then separately... Against whom? Both defendants to arbitrate with all plaintiffs? Yes. Even though I don't even understand you to claim that every plaintiff has an arbitration agreement with both defendants. Well, that's right. The arbitration agreement is... And since you're not even making that claim, what can this requirement possibly be? Well, the claims are brought against both Samsung Electronics Corporation and Samsung America, and the arbitration agreement says by its terms that it also encompasses disputes with the parent company. And so under the New York Convention, there's jurisdiction over that. I'm not at... This question wasn't about jurisdiction. It was about trying to make sense of what the district court thinks it has done in the absence of anything like a separate order. I think what the district court thinks it has done with its memorandum of order and order is order the parties to arbitration, and then separately in... Order both parties to arbitrate with all plaintiffs whether or not they have an arbitration agreement with any particular plaintiff. Well, I think that the court concluded that there was an arbitration agreement that bound all Samsung customers, and that the claimants had shown that they're Samsung customers. I'd like to turn to that, but first, if I may, I'd like to address jurisdiction. Yes. When Congress... I have the same Smith against Paziri question for you. Sure. Yeah. So the question in that case is about the propriety of a dismissal rather than a stay. The question is whether courts are required to stay proceedings once there's been an order to compel arbitration. Here, there's no dispute that what the district court did was stay the So any proceedings that would occur, and I think... What? So what did the plaintiffs ask for that has been stayed? So this is just like in FC Stanton... No, no, I'm asking a concrete question. What did you, your clients, ask for that has been stayed? Well, we asked to compel arbitration. We asked... Well, that hasn't been stayed. That hasn't been stayed. We asked to compel the payment of fees, and as this court has recognized... So you need to tell me what you asked for that you think has been stayed. Well, I think with respect, Judge Easterbrook, that's not the right question. What this court has said over and over again in cases like Halim v. Great Gatsby's is that the proper course of action when the party is invoked an arbitration clause is to stay the proceedings, and the court has explained... When there is an underlying request for relief, for example. But that, but the court has made clear that it's not only when there's an underlying request for relief. So, for example, in the Kawasaki Heavy Industries case, this court said that the court retains jurisdiction over a matter so that it can effectuate... Yeah, if it retains jurisdiction, but if it's given the plaintiff all the relief they want... Right. You know, what your argument seems to be that a district court, by a stroke of the pen, can defeat the green tree principle. That if the only thing at stake was arbitration, and it's been ordered, then that's appealable. And you seem to be saying perhaps the district court thought that he could just sign away the green tree right of appeal. Green tree is actually the exception. The norm is to stay, and this court has made clear in the Kawasaki case that the stay is not just to address pending claims. It's also to address arbitration-related issues that can arise. If you look at Chapter 1 of the Federal Arbitration Act, it's a set of issues that can arise during the arbitration. For example, parties may need to come back to the court for requiring order to pay fees, the appointment of an arbitrator, an order for witnesses. And so this court has said that the norm is a stay, and that's what other courts have said as well. And I think if you want to look at a decision to stay pending arbitration, you can look at the Sixth Circuit decision in preferred care. I'm not asking about decisions in other circuits. Right. I'm trying to figure out concretely what, if anything, is left for the district court to decide in this case. I think what the district court understood is that this was a hotly contested dispute between the parties, where one party, one set of arbitrate, and the district court understood that, as often happens, the parties may come back to the court because one party hasn't paid the fees or because there's been a dispute about how the arbitration will proceed. An international F.C. Stone was a very similar case, where there, the appellant came to this court, and in argument they were asked the same question that you're asking, Judge Easterbrook. What is the purpose of this stay? And they said there is nothing to stay, there was no reason for the stay, but the district court understood otherwise. It understood that the parties may come back, and indeed they did, because they had to dispute about where the arbitration should take place. That sounds like saying that no case is ever final, because the parties always may come back. No. They may file a Rule 60B motion. In an ordinary civil case where there's a judgment on a jury verdict, the parties may file other motions. Therefore, nothing is final. The design of the Federal Arbitration Act is that the final judgment is after the arbitration is had, when there is an award and there are proceedings. If the thing sought in the case is in order to arbitrate, that has to be the final judgment. The district court won't do anything else because the plaintiffs have received the relief they requested. That is not the design of the Federal Arbitration Act, and no circuit holds that. Look, I'm just not impressed by statements about something of the design. I'm impressed by people pointing me to statutory language, right? But statements about the design of is an implied argument about the intent of people, and I don't care about their intent. Let's stick with the text. But I care a lot about the text. Let's stick with the text, then. Good. So the text of the Federal Arbitration Act, I think, is quite clear, and you've talked about this in your Moglia decision. Affirmatively, the decision of the court is not relevant. Okay, so just look at the text. It says that it lists three kinds of orders. Orders granting a stay of any action under Section 3 of this title, directing arbitration to proceed under Section 4, and let's focus on that. Section 4, a Section 4 proceeding is what my friends on the other side don't want to call an independent proceeding, but it is, right? It's where there isn't a case, someone comes into court, and they say, we want to compel arbitration under Section 4. And so the relief that they get is the order to compel arbitration. And what Congress is saying in B-2 is that when you obtain that order to compel arbitration, it is not an appealable order, and that's why it's listed there. And that overturns some of the complex, judge-made law that I know we don't want to talk about decisions, but I do want to flag one decision of yours, Judge Easterbrook. Bradford Scott from 1997, where you explained exactly this. He said Section 16... Ad hominem arguments just don't cut it. The court may have explained something. What this court said in Bradford Scott is that Section 16 replaced that much maligned and low anti-arbitration decisions are immediately appealable, while orders enforcing arbitration clauses may be appealed only following the close of the entire case. And where do you understand where the close of the entire case is? If you look at Section 9 of the Federal Arbitration Act, it explains how you get a judgment after an arbitration. That is the judgment that Congress had in mind. So the route in Greentree where there's a dismissal, that's actually an abberation. I don't know, Judge Smith, whether that aberration persists, but the conventional understanding is that under this statutory design that there is a stay, and even if there isn't a stay... I'm not sure that the justices would be altogether happy with the Seventh Circuit saying, well, there's Greentree, but it's an aberration. So we move right along. I don't mean to suggest that you need to get into that at all. I think the question presented in Smith is not a jurisdictional question. And the Supreme Court has said in Arthur Anderson that Section 16 keeps those jurisdictional merits lines... Well, I need to stop bothering you about jurisdiction so you can use your remaining time to argue the merits. Well, I'm happy to just make a couple of other points about jurisdiction, if I may, Your Honor, because I think, you know, even if you didn't have a stay, and I understand, Judge Easterbrook, you have some concerns about the district court entering the stay. This was precisely the concern that this court had in Napleton, the idea that a district court could be a gatekeeper about whether there is jurisdiction. And the Supreme Court overturned Napleton in Greentree. And so the effect of Greentree is that the district court does have a say in whether or not they keep the case or whether there's an appellate route. And even if there weren't a stay here, even if you were just... even if Section 16 didn't exist, and you were just analyzing this case under traditional principles of finality, you still don't have what the law would have regarded as a final judgment. Even before Section 16, stays were considered inherently interlocutory. They still are. And stays pending arbitration were considered interlocutory and were not final judgments under Section 1291. And so in the remaining time, I may just turn to the merits. And what you heard from Mr. Dvoretsky is that we didn't establish with evidence that there were arbitration agreements on which the district court can compel arbitration. I actually think the dispute here is very narrow. The parties agree that anyone who uses or purchases a Samsung device, of the devices in question, is bound by in a motion to compel arbitration proceeding. The standards are somewhat analogous to summary judgment, but it's a summary proceeding. The parties agree that the initial burden is on the proponent of arbitration, and that once that initial burden is satisfied, the burden shifts. So the parties agree on all of that. And my friend on the other side filed a 28-J response a few days ago that cites a decision from the Sixth Circuit by Judge Murphy that I think is a very helpful analysis of this murky procedural area that honestly hasn't been theorized very much by the federal courts. Surprising, given that the statute has been around for a hundred years. But it's a case called Boykin v. Family Dollar. And that court explained there that the initial duty to present evidence is the duty to present evidence that would allow a trier of fact to find that an arbitration agreement exists. Here, we did submit evidence. The evidence was the record of the prior proceeding on this very issue before the arbitral body that Samsung chose. And that record included the claimants' individualized filings before the Triple Eight, in which each claimant stated that they are a Samsung customer, bound by Samsung's broad arbitration agreement, and provided exactly the kind of biographical information Mr. Gretzky alluded to. That record also showed Samsung's failure to rebut those filings, despite information in its possession showing which claimants were customers, and significant vetting that took place before the Triple Eight. Family Dollar also holds that circumstantial evidence in the lead-up to a motion to compel is appropriately considered. That's at page 840 through 841 of that decision. What form was the spreadsheet admitted in the arbitration? In what form? In the... Sworn? In the arbitration, the spreadsheets were not... I don't believe that the Triple Eight's rules required a sworn form. And I think Your Honor's question... So it wasn't submitted in a form that would be admissible in federal court as evidence? Well, the rules... Or accepted in federal court as evidence? The summary judgment rules are not that the summary judgment evidence has to be evidence that's admitted at trial. And had there been... I want to make clear, there was no... All we have is the raw spreadsheet is the bottom line, right? Listing... Listing customers who were solicited for the lawsuit via email and social media advertisements. No, I think we have much more than the spreadsheet, Chief Justice Sykes. What we have is the record of what happened in the arbitral proceeding. This is as if... If you have a agency proceeding or the question is about whether someone is exhausted, the first thing you would look at would be the record of what happened before the proceeding. And there, whenever individual issues were raised by the Triple A or by Samsung, they were immediately cured. And it's what Judge Leibenweber relied upon was not just the list of claimants, but the fact that all of this information had been presented. These people identified themselves as Samsung customers bound by the arbitration agreement. And at that point, given all of that evidence, the burden shifted to Samsung to identify some individual issues. They never did. What they wanted... There really was no evidentiary showing about the existence of an arbitration agreement for these tens of thousands of plaintiffs. Well, there were... All there was was a submission of the spreadsheet to the arbitrator. No, I want to be clear, there was not... At filing. And the filing requirements don't require anything more than that. Not just the spreadsheet. There was also an individual demand by each and every claimant attesting to who they were, that they were Samsung customers, where they lived, their email address, their phone number, which would identify them to Samsung as customers in their accounts. And what form was that submitted in? Affidavit? That was... Those were in the demand forms under... In the Triple A. Not an affidavit. Not a sworn statement. Right. And so it's not evidence in federal court. Let me get to the heart of what I think is sufficient that there were not sworn statements. And I do want to make very clear that Samsung never made an evidentiary objection to the admissibility of any of this evidence in the district court. Had they done so, the district court would have ruled on that and we would have been able to supplement with whatever evidence was necessary to make that showing. But they didn't make that... You've got affidavits from all these tens of thousands of plaintiffs? Do we have sworn statements that they are parties to an arbitration agreement? If they had made an evidentiary objection, we certainly would have put forward those statements. Yes. And to answer your question... Samsung asked in the district court for those statements and the plaintiffs declined to file them. You say we certainly would have put them forward. It doesn't seem consistent with what actually happened. Well, there was no objection to the form of the evidence. There was no admissibility evidence. Actually, if you look in the district court, Samsung didn't raise this issue until the last two pages. Speaking in terms of the rules of evidence, was there an offer of proof? I mean, I think we made an offer of proof in the sense that we put forward... In the sense, did you make an offer of proof as the rules of evidence use that phrase? Yes. I mean, we provided the record before the petition to compel arbitration showing what occurred there. And I think, you know, I can represent to the court that the Claimants Council have already begun gathering signed declarations under penalty of perjury out of an abundance of caution and would be prepared to file those to the AAA before the process arbitrator at the appropriate time. I just don't see how for AT&T, it's the judge who has to decide whether there's an arbitration agreement. That's absolutely right. That's absolutely right, Judge Easterbrook. The judge decides whether there is an arbitration agreement. All I'm saying is that it doesn't make a lot of sense to view this question from the perspective of as if it were a case where the parties started out in court. It's relevant what happened before the AAA. It's relevant that all of these arguments were fleshed out before the AAA and at every opportunity, Samsung never identified individual issues or claimants. And when they did, those issues were cured. And I think the reason is because what Samsung really wants to be able to do is not have those issues be cured. Because the reality is they know. They know who is a Samsung customer. They know whether north of 90% or more of these people are people that are in their records and that are bound by the arbitration agreement. And so what they want to be able to do is raise questions about one or two people and hold those issues open so that it seems as if there is some doubt about whether all of these people are bound by the arbitration agreement. But every time that Samsung actually raised these issues, they were cured. Thank you. All right, thank you. Mr. Zaretsky, you had some time left. If I could, I'd like to address jurisdiction and the evidentiary argument. With respect to jurisdiction, Judge Easterbrook, in response to your questions, a few points. One, starting with the statutory text under 9 U.S.C. section 16A.3, a final decision with respect to an arbitration that is subject to this title is appealable. It's only an interlocutory order that is not. And under the Supreme Court's decision in Greentree, a final decision is one that leaves nothing left for the district court to do. That's what we have here. With respect to what the district court did order here, at the beginning of the district court's opinion, it defines the two parties here, Samsung Electronics America and Samsung Electronics Co., as Samsung. And as to them at RSA 36, it is ordering them to arbitrate and specifically to pay the fees. It's also memorialized at docket entry number 50, that's the minute order, that's the minute entry, that also has the purported stay. With respect to the purported stay, the appellees in this case did not ask the district court to stay anything. They didn't request a stay. The only thing they requested was the relief they received, which is the order compelling arbitration and for Samsung to pay the fees. This court's decision in F.C. Stone dealt with a different situation. That was one, that was a case where a FINRA arbitration was brought, the court ordered arbitration to a different arbitral body, and there remained a pending question before the court about whether to permanently enjoin the FINRA arbitration. That there is what was stayed and what made the decision non-final. Judge Easterbrook, with respect to your questions about the separate judgment, a separate judgment is not required in order for there to be appellate jurisdiction. We addressed this in our jurisdictional memo. Yes, that's bankers' trust against malice, I understand that, but it sure does help. And perhaps it would be advisable for district courts to do that? We have urged all of our district courts to enter proper final decisions. Six out of seven of our districts do so. Your case happens to be in the seventh. Even so, under federal rule of appellate procedure 4A7B, which I know you're familiar with, the final appealable judgment, where we, as we have done here, waive that requirement. With respect to the evidentiary issue, first of all, lawyers' statements that are not sworn are simply not evidence. The spreadsheet that Mr. Gupta refers to that was submitted before the AAA, it's at SA 1214-46, it is not sworn, it is simply a spreadsheet with limited information about the claimants. It does not include what model phone they owned, any information about the phone, where or when they bought the phone, and the claimants here are asserting claims as owners of Samsung devices, and so they need to provide the court information establishing that they had arbitration agreements with Samsung as owners. It is not our burden to rebut non-evidence by the appellees. Under the Boykin case that Mr. Gupta referred to from our 28J letter, it makes that clear, that the burden shifts to the opposing party to rebut evidence only when the moving party has actually put evidence before the court, and here there has simply been no evidence put before the court, or before the AAA for that matter, establishing an arbitration agreement. As for the argument that Samsung surely knows all of its customers, it doesn't. Again, as I said in the opening argument, Samsung is not primarily a direct-to-consumer company. This is not like Verizon or Facebook, which has records of all of its customers. Samsung does not. It sells mostly through through carriers or through retail stores, and so Samsung is simply not going to have a complete customer list. That is precisely why we need evidence from the appellees, and the court needs evidence from the appellees in order for Samsung to carry any burden that it might have. But lastly, I would say on the fee issue, the court should simply reverse outright on the basis that even assuming there are arbitration agreements with each of these customers, the AAA applied its rules. That's what the purported arbitration agreements call for, and as the Fifth and Ninth Circuits held in Dealer Computer Services and LifeScan, the court has no basis to second-guess that decision by the AAA. The court has no other questions. We ask that the judgment be reversed. Thank you. Our thanks to all counsel. The case is taken under advisement. Our second case for